IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN JACKSON, | No. C 09-1785 CW (PR) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING AS MOOT DEFENDANTS' MOTION TO STAY DISCOVERY; DENYING PLAINTIFF'S MOTIONS FOR APPOINTMENT OF COUNSEL AND TO ISSUE SUMMONS |
| v. | |
| B. SULLIVAN, et al., | |
| Defendants. | |
| _____/ | (Docket nos. 20, 21, 23, 26) |

Plaintiff, a death row prisoner incarcerated at San Quentin State Prison (SQSP), has filed this 42 U.S.C. § 1983 action seeking injunctive relief and damages.  Defendants SQSP Warden Robert L. Ayers and Appeals Examiner B. Sullivan have filed a motion for judgment on the pleadings, Plaintiff has opposed the motion and Defendants have filed a reply.[1]  For the reasons discussed below, the motion is GRANTED and the action is DISMISSED without leave to amend.

DISCUSSION

A.   Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings."  Judgment on the pleadings is proper when, "taking all allegations in the pleadings as true, the moving party is entitled to judgment as a

---

[1]SQSP Appeals Coordinator V. Kelly has not been served. Because this order dismisses the action, Plaintiff's motion to issue summons to serve Kelly is DENIED.

**United States District Court**
For the Northern District of California

1 matter of law."  <u>Stanley v. Trustees of the Cal. State Univ.</u>, 433

2 F.3d 1129, 1133 (9th Cir. 2006).  On the face of the pleadings,

3 the moving party must clearly establish "that no material issue of

4 fact remains to be resolved."  <u>Hal Roach Studios, Inc. v. Richard</u>

5 <u>Feiner & Co., Inc.</u>, 896 F.2d 1542, 1551 (9th Cir. 1989).

6      A Rule 12(c) motion is "functionally identical" to a Rule

7 12(b) motion.  <u>Dworkin v. Hustler Magazine, Inc.</u>, 867 F.2d 1188,

8 1192 (9th Cir. 1989).  Thus, the same standard of review applies

9 to both.  Under both rules, "the allegations of the non-moving

10 party must be accepted as true, while the allegations of the

11 moving party which have been denied are assumed to be false."  <u>Hal</u>

12 <u>Roach Studios, Inc.</u>, 896 F.2d at 1550.  A court need not accept as

13 true, however, unreasonable inferences, unwarranted deductions of

14 fact, or conclusory legal allegations cast in the form of factual

15 allegations.  <u>See Western Mining Council v. Watt</u>, 643 F.2d 618,

16 624 (9th Cir. 1981).

17      In deciding such a motion, a court may properly consider

18 material submitted as part of the complaint, documents that are

19 not part of the complaint but are referred to extensively in the

20 complaint and considered authentic by all parties, and materials

21 that are part of the public record and thus subject to judicial

22 notice.  <u>See</u> <u>United States v. Ritchie</u>, 342 F.3d 903, 908-09 (9th

23 Cir. 2003).

24 B.   Plaintiff's Claims

25      The Court conducted a preliminary screening of Plaintiff's

26 original complaint pursuant to 28 U.S.C. § 1915A(a) and liberally

27 construed the allegations therein as an attempt by Plaintiff to

28 state three claims for relief, all pertaining to his designation

**United States District Court**
For the Northern District of California

1   as a death row prisoner reassigned from Grade A status to the more

2   restrictive Grade B/Privilege Group D (Grade B) status.

3   Specifically, the Court construed the complaint as raising the

4   following claims: (1) the Grade B designation violates due process

5   because Plaintiff was not afforded the procedural protections

6   provided to non-death-row prisoners who are reassigned to more

7   restrictive conditions of confinement, (2) the designation

8   violates his right to equal protection, and (3) the designation

9   violates his rights under the Eighth Amendment.  The Court

10  dismissed the complaint with leave to amend, finding that

11  Plaintiff had failed to allege sufficient facts to state a claim

12  for relief under any of the above three theories and that he had

13  failed to link Defendants Sullivan and Kelly to his allegations.

14  Docket no. 9.

15      Thereafter, Plaintiff filed an amended complaint; the Court

16  found Plaintiff's allegations, when liberally construed, cured the

17  pleading deficiencies with respect to the due process and equal

18  protection claims, and ordered those claims served on Defendants.

19  Because Plaintiff had not alleged facts in the amended complaint

20  pertaining to his Eighth Amendment claim, the Court dismissed that

21  claim without prejudice.  Docket no. 12.

22      When reviewing the legal sufficiency of the amended

23  complaint, the Court relied solely on the allegations therein.

24  Specifically, the Court relied on Plaintiff's allegations

25  concerning the language of various prison regulations, a decision

26  made by the classification committee to retain him on Grade B

27  status, and the content of the administrative appeals he filed

28  challenging his designation as a Grade B prisoner and Defendants'

1    responses thereto.  Plaintiff did not attach the regulations,

2    classification decision, administrative appeals or any other

3    documents to either his original or amended complaint.

4         In support of their motion for judgment on the pleadings,

5    Defendants have attached copies of the classification decision and

6    administrative appeals to which the complaint refers.  In ruling

7    on the motion, the Court considers these documents and also takes

8    judicial notice of the language of the prison regulations relied

9    upon by Plaintiff in the amended complaint.

10   C.   Analysis

11        1.   Due Process Claim

12        Plaintiff claims that his right to due process was violated

13   when, after he was found guilty of a disciplinary violation,

14   Defendants chose not to sentence him to a determinate term of

15   punishment on Grade B status but, instead, relied upon the

16   disciplinary violation as justification to reassign him

17   permanently to Grade B status.  He analogizes this to being

18   assigned to an indeterminate term in administrative segregation or

19   the secured housing unit (SHU) for non-death-row prisoners.  He

20   maintains that if he had received a determinate term of punishment

21   on Grade B status he would have been able to return to Grade A

22   status when the term ended, but because he has been reassigned to

23   Grade B status he cannot return to Grade A status until the Unit

24   Classification Committee (UCC) and Institutional Classification

25   Committee (ICC) allow him to do so, and that the criteria used to

26   guide their decisions are wholly discretionary.

27        The requirements of due process apply only to the deprivation

28   of interests encompassed by the Fourteenth Amendment's protection

United States District Court
For the Northern District of California

1    of liberty and property.  Board of Regents v. Roth, 408 U.S. 564,

2    569 (1972).  A protected liberty interest may be created either by

3    the Due Process Clause of its own force or by states through

4    statutes or regulations.  Sandin v. Connor, 515 U.S. 472, 483-84

5    (1995).  The hardship associated with administrative segregation,

6    such as loss of recreational and rehabilitative programs or

7    confinement to one's cell for a lengthy period of time, is not so

8    severe as to violate the Due Process Clause itself.  See Toussaint

9    v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986) (applying

10   Hewitt v. Helms, 459 U.S. 460 (1983)).

11        A deprivation authorized by state law may amount to

12   deprivation of a protected liberty interest if the deprivation is

13   one of "real substance," that "imposes atypical and significant

14   hardship on the inmate in relation to the ordinary incidents of

15   prison life," Sandin, 515 U.S. at 484, or "will inevitably affect

16   the duration of [a] sentence," id. at 487.  The Ninth Circuit

17   holds that when prison officials initially determine whether a

18   prisoner is to be segregated for administrative reasons due

19   process requires that they comply with the following procedures:

20   (1) they must hold an informal non-adversarial hearing within a

21   reasonable time after the prisoner is segregated, (2) the prisoner

22   must be informed of the charges against him or the reasons

23   segregation is being considered, and (3) he must be allowed to

24   present his views.  See Toussaint, 801 F.2d at 1100.

25   Additionally, "some evidence" must support the decision to place

26   an inmate in segregation for administrative reasons.  Id. at 1104.

27        Defendants argue that Plaintiff fails to state a due process

28   claim because he has not alleged facts that show either that

5

**United States District Court**
For the Northern District of California

1  reassignment to Grade B status is a deprivation of "real

2  substance," or that he has not been provided with constitutionally

3  adequate process.[2]

4      The Court need not decide whether Plaintiff has alleged facts

5  that show that reassignment to Grade B status amounts to a

6  deprivation of real substance.  Even if he has, he has failed to

7  allege facts that show he has been denied due process.

8  Specifically, he does not allege that he was not provided with

9  notice and a hearing at which he was allowed to present his views,

10 or that there was not some evidence to support the decision to

11 place him on Grade B status.  Rather, he alleges the following: he

12 initially was placed on Grade B status on April 29, 2006, when he

13 was charged with a rules violation; on January 1, 2007, he was

14 found guilty of a lesser offense, specifically, the serious rules

15 violation of conspiracy to murder a peace officer; on February 1,

16 2007, he appeared before the ICC and was informed that he would

17 not be assessed a determinate term of punishment on Grade B status

18 but, instead, would be reassigned to Grade B status and reviewed

19 every ninety days to determine whether he could be returned to

20 Grade A status.  Notably, Plaintiff alleges that he was assigned

21 Grade B status because of the "rule violation [he] was found

22 guilty of."  (Am. Compl. at 7.)

23     Nor does Plaintiff allege that Defendants have failed to

24 review his continued Grade B status.  When an inmate has been

25

26     [2] Whether Plaintiff's reassignment to Grade B status will
inevitably affect the duration of his sentence, see Sandin, 515
27 U.S. at 487, is not at issue because Plaintiff has been sentenced
to death.
28

**United States District Court**
For the Northern District of California

placed in administrative segregation, prison officials must engage in some sort of periodic review of his confinement.  See Hewitt, 459 U.S. at 477 n.9; Toussaint, 801 F.2d at 1101.  Here, Plaintiff acknowledges that he has been provided with periodic reviews, every ninety days, by the UCC, and has received regular reviews by the ICC.  Additionally, he acknowledges that, at these reviews, he has been provided with the opportunity to ask questions, has been informed of the reasons for the reviewing committee's decision to retain him on Grade B status, and has been able to present his views.  Consequently, he has been provided with at least the procedural protections to which he is entitled.  See Wilkinson v. Austin, 545 U.S. 209, 217, 224 (2005) (finding due process satisfied by indeterminate administrative segregation policy that requires periodic review of inmate's files every thirty days and annual review at which inmate is allowed to appear and present his views).

Based on the foregoing, the Court finds Plaintiff's allegations fail to state a claim upon which relief may be granted for the violation of due process.  Accordingly, Defendants' motion for judgment on the pleadings is GRANTED on this claim.  Because the Court finds amendment would be futile, the claim is dismissed without leave to amend.

2.   Equal Protection Claim

Plaintiff alleges that Defendants are violating his right to equal protection by using highly discretionary procedures to place and retain death row prisoners on Grade B status that are different than those used to place and retain non-death-row prisoners on restrictive status in administrative segregation and

**United States District Court**
For the Northern District of California

1    the SHU.  Specifically, he alleges that regulations promulgated by

2    the California Department of Corrections and Rehabilitation

3    require that non-death-row prisoners who are found guilty of a

4    serious rules violation be sentenced to a determinate term in the

5    SHU and then returned to their prior housing status after the term

6    is served, while death row prisoners do not receive a determinate

7    term of punishment but instead are placed on Grade B status for an

8    indeterminate term and without specific criteria for release.

9         "The Equal Protection Clause of the Fourteenth Amendment

10   commands that no State shall 'deny to any person within its

11   jurisdiction the equal protection of the laws,' which is

12   essentially a direction that all persons similarly situated should

13   be treated alike."  City of Cleburne v. Cleburne Living Center,

14   473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216

15   (1982)).  The different treatment of unlike groups does not

16   support an equal protection claim.  Thornton v. City of St.

17   Helens, 425 F.3d 1158, 1168 (9th Cir. 2005).  In order for a

18   prisoner to state an equal protection claim when challenging his

19   treatment in contrast to that of other prisoners, he must allege

20   that his treatment is invidiously dissimilar to that received by

21   other prisoners.  See More v. Farrier, 984 F.2d 269, 271-72 (8th

22   Cir. 1993).

23       Defendants argue that Plaintiff's allegations fail to state a

24   claim upon which relief may be granted because death row prisoners

25   are not situated similarly to non-death-row prisoners.  Plaintiff

26   maintains that the two groups are similarly situated because

27   placing a death row prisoner on Grade B status is equivalent to

28

1 placing a non-death-row prisoner in administrative segregation or

2 the SHU.  The Court need not decide whether death row and

3 non-death-row prisoners are similarly situated in this regard;

4 even if they are, the inferences drawn by Plaintiff from the

5 regulatory language are unreasonable and his factual allegations

6 are therefore unsubstantiated.

7     As an initial matter, and contrary to Plaintiff's

8 allegations, the regulations do not require that a non-death-row

9 prisoner found guilty of a serious rule violation be sentenced to

10 a determinate term in the SHU.  Rather, they provide that the

11 prisoner be assessed a credit forfeiture.  15 Cal. Code Regs.

12 (C.C.R.) § 3315(f)(3).  In particular, a prisoner found guilty of

13 conspiracy to murder a peace officer -- the serious rules

14 violation of which Plaintiff was found guilty -- is to be assessed

15 a credit forfeiture of 151-180 days.  15 C.C.R. § 3323(c)(8).

16 However, credit forfeitures can be assessed only against prisoners

17 serving determinate terms.  15 C.C.R. § 3323(a).  Additionally,

18 after a rules violation has been adjudicated against a

19 non-death-row prisoner, a serious disciplinary action can be

20 referred to a classification committee to determine whether the

21 prisoner should be assigned to a different work or housing group.

22 15 C.C.R. § 3315(g).  The classification regulations provide that

23 a "determinate period of confinement in SHU may be established for

24 an inmate found guilty of a serious offense," or that an inmate

25 can be assigned to an indeterminate SHU term if he is "deemed to

26 be a threat to the safety of others or the security of the

27 institution."  15 C.C.R. § 3341.5(c)(1) & (c)(B)(1).

28

United States District Court
For the Northern District of California

1    Like non-death-row prisoners found guilty of a serious rules

2  violation who are not serving determinate terms of imprisonment,

3  Plaintiff is ineligible for credit forfeiture as a disciplinary

4  measure.  And, like non-death-row prisoners who have had a serious

5  rules violation adjudicated, he is subject to reclassification,

6  including either a determinate or indeterminate SHU term.

7  Consequently, Plaintiff's contention that he has been treated

8  differently from non-death-row prisoners because he did not

9  receive a determinate term on Grade B status is unsupported.

10    Nor do the regulations provide, as Plaintiff alleges, that a

11  non-death-row prisoner will be returned to his former housing

12  status after serving a determinate SHU term.  Rather, they provide

13  that, when a determinate SHU term ends, a non-death-row prisoner

14  may continue to be retained in the SHU if, among other things, a

15  classification committee determines that "[r]elease of the inmate

16  would severely endanger the lives of inmates or staff, the

17  security of the institution, or the integrity of an investigation

18  into suspected criminal activity or serious misconduct."  15

19  C.C.R. § 3341.5(c)(3).  Here, Plaintiff acknowledges that the UCC

20  explained its denial of his request to be referred to the ICC for

21  Grade A consideration as follows: "This is based on the

22  seriousness of his RVR's, DTD, 12/11/07 for Possession of Alcohol

23  and couple[d] with RVR DTD on 11/30/05 for Conspiracy to commit[]

24  the Murder of A Peace Officer.  Committee feels a longer period of

25  observation on [Grade] B is needed to evaluate inmate Jackson's

26  behavior."  Defs.' Ex. E.  Thus, the Court finds no merit to

27  Plaintiff's contention that he has been treated differently than

28

**United States District Court**
For the Northern District of California

1  non-death-row prisoners because Defendants have exercised

2  discretion to retain him on Grade B status.

3      Similarly, the language of the regulations does not support

4  Plaintiff's allegation that prison officials may retain on

5  indeterminate SHU status only those non-death-row prisoners who

6  are validated gang members or associates.  Rather, the regulations

7  provide, "Release from segregation status shall occur at the

8  earliest possible time in keeping with the circumstances and

9  reasons for the inmate's initial placement in administrative

10 segregation."  15 C.C.R. § 3339(a).  Because prison officials have

11 discretion to determine when non-death-row prisoners are eligible

12 for release from an indeterminate SHU term based on the

13 circumstances surrounding their SHU placement, Plaintiff's

14 contention, that he has been treated differently than

15 non-death-row prisoners because Defendants have exercised their

16 discretion to retain him on Grade B status, is unsubstantiated.

17      Based on the above, the Court finds Plaintiff's factual

18 deduction of differential treatment based on the language of the

19 noted regulations is unwarranted.  Further, to the extent the

20 regulations do treat death row and non-death-row prisoners

21 differently, Plaintiff has not alleged facts from which an

22 inference of invidious discrimination can be drawn.  See More, 984

23 F.2d at 271-72.[3]  Because Plaintiff's allegations fail to state a

24 _____

25      [3] Defendants further argue that, even if Plaintiff has been
   treated differently than other prisoners to whom he is similarly
26 situated, he has alleged no facts to suggest that such differences
   are not reasonably related to legitimate penological interests.
27 See Turner v. Safley, 482 U.S. 78, 89-91 (1987).  The Court
   declines to rule on this argument as it requires the development
28 of an evidentiary record.

1  claim upon which relief may be granted for an equal protection

2  violation, Defendants' motion for judgment on the pleadings is

3  GRANTED on this claim.  Additionally, because the Court finds

4  amendment would be futile, the claim is dismissed without leave to

5  amend.[4]

6                            CONCLUSION

7       For the foregoing reasons, the Court orders as follows:

8       1.   Defendants' motion for judgment on the pleadings is

9  GRANTED.

10      2.   Defendants' motion to stay discovery is DENIED as moot.

11      3.   Plaintiff's motions to issue summons and for the

12  appointment of counsel are DENIED as moot.

13      This Order terminates Docket nos. 20, 21, 23 and 26.

14      The Clerk of the Court shall enter judgment and close the

15  file.

16      IT IS SO ORDERED.

17

18  Dated:  1/24/2013                    _____
                                         CLAUDIA WILKEN
19                                       United States District Judge

20

21

22

23

24  _____

25

26      [4] Because the motion for judgment on the pleadings is granted
    based on Plaintiff's failure to state a due process or equal
27  protection claim, the Court does not reach Defendants' other
    arguments.
28

12