IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JONATHAN JACKSON,

       Plaintiff,

   v.

B. SULLIVAN, et al.,

       Defendants.

_____/

No. C 09-1785 CW (PR)

ORDER GRANTING DEFENDANTS'
MOTION FOR JUDGMENT ON THE
PLEADINGS; DENYING AS MOOT
DEFENDANTS' MOTION TO STAY
DISCOVERY; DENYING
PLAINTIFF'S MOTIONS FOR
APPOINTMENT OF COUNSEL AND TO
ISSUE SUMMONS

(Docket nos. 20, 21, 23, 26)

    Plaintiff, a death row prisoner incarcerated at San Quentin State Prison (SQSP), has filed this 42 U.S.C. § 1983 action seeking injunctive relief and damages.  Defendants SQSP Warden Robert L. Ayers and Appeals Examiner B. Sullivan have filed a motion for judgment on the pleadings, Plaintiff has opposed the motion and Defendants have filed a reply.[1]  For the reasons discussed below, the motion is GRANTED and the action is DISMISSED without leave to amend.

DISCUSSION

A.   Standard of Review

    Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings."  Judgment on the pleadings is proper when, "taking all allegations in the pleadings as true, the moving party is entitled to judgment as a

_____

[1]SQSP Appeals Coordinator V. Kelly has not been served. Because this order dismisses the action, Plaintiff's motion to issue summons to serve Kelly is DENIED.

United States District Court
For the Northern District of California

matter of law." <u>Stanley v. Trustees of the Cal. State Univ.</u>, 433 F.3d 1129, 1133 (9th Cir. 2006).  On the face of the pleadings, the moving party must clearly establish "that no material issue of fact remains to be resolved." <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1551 (9th Cir. 1989).

A Rule 12(c) motion is "functionally identical" to a Rule 12(b) motion. <u>Dworkin v. Hustler Magazine, Inc.</u>, 867 F.2d 1188, 1192 (9th Cir. 1989).  Thus, the same standard of review applies to both.  Under both rules, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." <u>Hal Roach Studios, Inc.</u>, 896 F.2d at 1550.  A court need not accept as true, however, unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations.  <u>See Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

In deciding such a motion, a court may properly consider material submitted as part of the complaint, documents that are not part of the complaint but are referred to extensively in the complaint and considered authentic by all parties, and materials that are part of the public record and thus subject to judicial notice.  <u>See</u> <u>United States v. Ritchie</u>, 342 F.3d 903, 908-09 (9th Cir. 2003).

B.  Plaintiff's Claims

The Court conducted a preliminary screening of Plaintiff's original complaint pursuant to 28 U.S.C. § 1915A(a) and liberally construed the allegations therein as an attempt by Plaintiff to state three claims for relief, all pertaining to his designation

United States District Court
For the Northern District of California

as a death row prisoner reassigned from Grade A status to the more restrictive Grade B/Privilege Group D (Grade B) status. Specifically, the Court construed the complaint as raising the following claims: (1) the Grade B designation violates due process because Plaintiff was not afforded the procedural protections provided to non-death-row prisoners who are reassigned to more restrictive conditions of confinement, (2) the designation violates his right to equal protection, and (3) the designation violates his rights under the Eighth Amendment.  The Court dismissed the complaint with leave to amend, finding that Plaintiff had failed to allege sufficient facts to state a claim for relief under any of the above three theories and that he had failed to link Defendants Sullivan and Kelly to his allegations. Docket no. 9.

Thereafter, Plaintiff filed an amended complaint; the Court found Plaintiff's allegations, when liberally construed, cured the pleading deficiencies with respect to the due process and equal protection claims, and ordered those claims served on Defendants. Because Plaintiff had not alleged facts in the amended complaint pertaining to his Eighth Amendment claim, the Court dismissed that claim without prejudice.  Docket no. 12.

When reviewing the legal sufficiency of the amended complaint, the Court relied solely on the allegations therein. Specifically, the Court relied on Plaintiff's allegations concerning the language of various prison regulations, a decision made by the classification committee to retain him on Grade B status, and the content of the administrative appeals he filed challenging his designation as a Grade B prisoner and Defendants'

1  responses thereto.  Plaintiff did not attach the regulations,

2  classification decision, administrative appeals or any other

3  documents to either his original or amended complaint.

4       In support of their motion for judgment on the pleadings,

5  Defendants have attached copies of the classification decision and

6  administrative appeals to which the complaint refers.  In ruling

7  on the motion, the Court considers these documents and also takes

8  judicial notice of the language of the prison regulations relied

9  upon by Plaintiff in the amended complaint.

10 C.  Analysis

11      1.  Due Process Claim

12      Plaintiff claims that his right to due process was violated

13 when, after he was found guilty of a disciplinary violation,

14 Defendants chose not to sentence him to a determinate term of

15 punishment on Grade B status but, instead, relied upon the

16 disciplinary violation as justification to reassign him

17 permanently to Grade B status.  He analogizes this to being

18 assigned to an indeterminate term in administrative segregation or

19 the secured housing unit (SHU) for non-death-row prisoners.  He

20 maintains that if he had received a determinate term of punishment

21 on Grade B status he would have been able to return to Grade A

22 status when the term ended, but because he has been reassigned to

23 Grade B status he cannot return to Grade A status until the Unit

24 Classification Committee (UCC) and Institutional Classification

25 Committee (ICC) allow him to do so, and that the criteria used to

26 guide their decisions are wholly discretionary.

27      The requirements of due process apply only to the deprivation

28 of interests encompassed by the Fourteenth Amendment's protection

United States District Court
For the Northern District of California

4

of liberty and property.  <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972).  A protected liberty interest may be created either by the Due Process Clause of its own force or by states through statutes or regulations.  <u>Sandin v. Connor</u>, 515 U.S. 472, 483-84 (1995).  The hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, is not so severe as to violate the Due Process Clause itself.  <u>See</u> <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1091-92 (9th Cir. 1986) (applying <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983)).

A deprivation authorized by state law may amount to deprivation of a protected liberty interest if the deprivation is one of "real substance," that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," <u>Sandin</u>, 515 U.S. at 484, or "will inevitably affect the duration of [a] sentence," <u>id.</u> at 487.  The Ninth Circuit holds that when prison officials initially determine whether a prisoner is to be segregated for administrative reasons due process requires that they comply with the following procedures: (1) they must hold an informal non-adversarial hearing within a reasonable time after the prisoner is segregated, (2) the prisoner must be informed of the charges against him or the reasons segregation is being considered, and (3) he must be allowed to present his views.  <u>See</u> <u>Toussaint</u>, 801 F.2d at 1100. Additionally, "some evidence" must support the decision to place an inmate in segregation for administrative reasons.  <u>Id.</u> at 1104.

Defendants argue that Plaintiff fails to state a due process claim because he has not alleged facts that show either that

United States District Court
For the Northern District of California

reassignment to Grade B status is a deprivation of "real substance," or that he has not been provided with constitutionally adequate process.[2]

The Court need not decide whether Plaintiff has alleged facts that show that reassignment to Grade B status amounts to a deprivation of real substance. Even if he has, he has failed to allege facts that show he has been denied due process. Specifically, he does not allege that he was not provided with notice and a hearing at which he was allowed to present his views, or that there was not some evidence to support the decision to place him on Grade B status. Rather, he alleges the following: he initially was placed on Grade B status on April 29, 2006, when he was charged with a rules violation; on January 1, 2007, he was found guilty of a lesser offense, specifically, the serious rules violation of conspiracy to murder a peace officer; on February 1, 2007, he appeared before the ICC and was informed that he would not be assessed a determinate term of punishment on Grade B status but, instead, would be reassigned to Grade B status and reviewed every ninety days to determine whether he could be returned to Grade A status. Notably, Plaintiff alleges that he was assigned Grade B status because of the "rule violation [he] was found guilty of." (Am. Compl. at 7.)

Nor does Plaintiff allege that Defendants have failed to review his continued Grade B status. When an inmate has been

---

[2] Whether Plaintiff's reassignment to Grade B status will inevitably affect the duration of his sentence, see Sandin, 515 U.S. at 487, is not at issue because Plaintiff has been sentenced to death.

placed in administrative segregation, prison officials must engage
in some sort of periodic review of his confinement. See Hewitt,
459 U.S. at 477 n.9; Toussaint, 801 F.2d at 1101. Here, Plaintiff
acknowledges that he has been provided with periodic reviews,
every ninety days, by the UCC, and has received regular reviews by
the ICC. Additionally, he acknowledges that, at these reviews, he
has been provided with the opportunity to ask questions, has been
informed of the reasons for the reviewing committee's decision to
retain him on Grade B status, and has been able to present his
views. Consequently, he has been provided with at least the
procedural protections to which he is entitled. See Wilkinson v.
Austin, 545 U.S. 209, 217, 224 (2005) (finding due process
satisfied by indeterminate administrative segregation policy that
requires periodic review of inmate's files every thirty days and
annual review at which inmate is allowed to appear and present his
views).

Based on the foregoing, the Court finds Plaintiff's
allegations fail to state a claim upon which relief may be granted
for the violation of due process. Accordingly, Defendants' motion
for judgment on the pleadings is GRANTED on this claim. Because
the Court finds amendment would be futile, the claim is dismissed
without leave to amend.

2. Equal Protection Claim

Plaintiff alleges that Defendants are violating his right to
equal protection by using highly discretionary procedures to place
and retain death row prisoners on Grade B status that are
different than those used to place and retain non-death-row
prisoners on restrictive status in administrative segregation and

United States District Court
For the Northern District of California

7

United States District Court
For the Northern District of California

the SHU.  Specifically, he alleges that regulations promulgated by the California Department of Corrections and Rehabilitation require that non-death-row prisoners who are found guilty of a serious rules violation be sentenced to a determinate term in the SHU and then returned to their prior housing status after the term is served, while death row prisoners do not receive a determinate term of punishment but instead are placed on Grade B status for an indeterminate term and without specific criteria for release.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).  The different treatment of unlike groups does not support an equal protection claim.  Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005).  In order for a prisoner to state an equal protection claim when challenging his treatment in contrast to that of other prisoners, he must allege that his treatment is invidiously dissimilar to that received by other prisoners.  See More v. Farrier, 984 F.2d 269, 271-72 (8th Cir. 1993).

Defendants argue that Plaintiff's allegations fail to state a claim upon which relief may be granted because death row prisoners are not situated similarly to non-death-row prisoners.  Plaintiff maintains that the two groups are similarly situated because placing a death row prisoner on Grade B status is equivalent to

United States District Court
For the Northern District of California

placing a non-death-row prisoner in administrative segregation or the SHU.  The Court need not decide whether death row and non-death-row prisoners are similarly situated in this regard; even if they are, the inferences drawn by Plaintiff from the regulatory language are unreasonable and his factual allegations are therefore unsubstantiated.

As an initial matter, and contrary to Plaintiff's allegations, the regulations do not require that a non-death-row prisoner found guilty of a serious rule violation be sentenced to a determinate term in the SHU.  Rather, they provide that the prisoner be assessed a credit forfeiture.  15 Cal. Code Regs. (C.C.R.) § 3315(f)(3).  In particular, a prisoner found guilty of conspiracy to murder a peace officer -- the serious rules violation of which Plaintiff was found guilty -- is to be assessed a credit forfeiture of 151-180 days.  15 C.C.R. § 3323(c)(8). However, credit forfeitures can be assessed only against prisoners serving determinate terms.  15 C.C.R. § 3323(a).  Additionally, after a rules violation has been adjudicated against a non-death-row prisoner, a serious disciplinary action can be referred to a classification committee to determine whether the prisoner should be assigned to a different work or housing group. 15 C.C.R. § 3315(g).  The classification regulations provide that a "determinate period of confinement in SHU may be established for an inmate found guilty of a serious offense," or that an inmate can be assigned to an indeterminate SHU term if he is "deemed to be a threat to the safety of others or the security of the institution."  15 C.C.R. § 3341.5(c)(1) & (c)(B)(1).

United States District Court
For the Northern District of California

Like non-death-row prisoners found guilty of a serious rules violation who are not serving determinate terms of imprisonment, Plaintiff is ineligible for credit forfeiture as a disciplinary measure.  And, like non-death-row prisoners who have had a serious rules violation adjudicated, he is subject to reclassification, including either a determinate or indeterminate SHU term. Consequently, Plaintiff's contention that he has been treated differently from non-death-row prisoners because he did not receive a determinate term on Grade B status is unsupported.

Nor do the regulations provide, as Plaintiff alleges, that a non-death-row prisoner will be returned to his former housing status after serving a determinate SHU term.  Rather, they provide that, when a determinate SHU term ends, a non-death-row prisoner may continue to be retained in the SHU if, among other things, a classification committee determines that "[r]elease of the inmate would severely endanger the lives of inmates or staff, the security of the institution, or the integrity of an investigation into suspected criminal activity or serious misconduct."  15 C.C.R. § 3341.5(c)(3)**.**  Here, Plaintiff acknowledges that the UCC explained its denial of his request to be referred to the ICC for Grade A consideration as follows: "This is based on the seriousness of his RVR's, DTD, 12/11/07 for Possession of Alcohol and couple[d] with RVR DTD on 11/30/05 for Conspiracy to commit[] the Murder of A Peace Officer.  Committee feels a longer period of observation on [Grade] B is needed to evaluate inmate Jackson's behavior."  Defs.' Ex. E.  Thus, the Court finds no merit to Plaintiff's contention that he has been treated differently than

United States District Court
For the Northern District of California

1  non-death-row prisoners because Defendants have exercised

2  discretion to retain him on Grade B status.

3      Similarly, the language of the regulations does not support

4  Plaintiff's allegation that prison officials may retain on

5  indeterminate SHU status only those non-death-row prisoners who

6  are validated gang members or associates.  Rather, the regulations

7  provide, "Release from segregation status shall occur at the

8  earliest possible time in keeping with the circumstances and

9  reasons for the inmate's initial placement in administrative

10 segregation."  15 C.C.R. § 3339(a).  Because prison officials have

11 discretion to determine when non-death-row prisoners are eligible

12 for release from an indeterminate SHU term based on the

13 circumstances surrounding their SHU placement, Plaintiff's

14 contention, that he has been treated differently than

15 non-death-row prisoners because Defendants have exercised their

16 discretion to retain him on Grade B status, is unsubstantiated.

17     Based on the above, the Court finds Plaintiff's factual

18 deduction of differential treatment based on the language of the

19 noted regulations is unwarranted.  Further, to the extent the

20 regulations do treat death row and non-death-row prisoners

21 differently, Plaintiff has not alleged facts from which an

22 inference of invidious discrimination can be drawn.  See More, 984

23 F.2d at 271-72.[3]  Because Plaintiff's allegations fail to state a

24

25     [3] Defendants further argue that, even if Plaintiff has been
   treated differently than other prisoners to whom he is similarly
26 situated, he has alleged no facts to suggest that such differences
   are not reasonably related to legitimate penological interests.
27 See Turner v. Safley, 482 U.S. 78, 89-91 (1987).  The Court
   declines to rule on this argument as it requires the development
28 of an evidentiary record.

claim upon which relief may be granted for an equal protection
violation, Defendants' motion for judgment on the pleadings is
GRANTED on this claim.  Additionally, because the Court finds
amendment would be futile, the claim is dismissed without leave to
amend.[4]

CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.   Defendants' motion for judgment on the pleadings is
GRANTED.

2.   Defendants' motion to stay discovery is DENIED as moot.

3.   Plaintiff's motions to issue summons and for the
appointment of counsel are DENIED as moot.

This Order terminates Docket nos. 20, 21, 23 and 26.

The Clerk of the Court shall enter judgment and close the
file.

IT IS SO ORDERED.


Dated:  1/24/2013

CLAUDIA WILKEN
United States District Judge

---

[4] Because the motion for judgment on the pleadings is granted
based on Plaintiff's failure to state a due process or equal
protection claim, the Court does not reach Defendants' other
arguments.

United States District Court
For the Northern District of California